IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTOPHER JOSIAH BAIRD,

     Petitioner,

v.                                   CASE NO. 1:07-cv-185-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  The Petition stems from Petitioner's

Alachua County jury-trial conviction for burglary of a dwelling, for which he received a

15-year sentence as a prison releasee reoffender.  Respondent has filed a response

and appendix with relevant portions of the state-court record, and Petitioner filed a reply.

Docs. 9, 16.  Upon due consideration of the Petition, the Response, the Reply, and the

state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

Petitioner was charged with burglary of an occupied dwelling while armed.  The

evidence adduced by the State at trial may be summarized as follows.  The victim, Ann

Weaver, was alone in her home on the morning of September 24, 2001.  She was

cleaning her niece Karen White's bedroom when she heard someone enter the home.

_____

[1]Because the Court may resolve the Petition on the basis of the record, the Court
has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

Ms. Weaver hid in the bedroom closet, and through the louvers on the closet door she observed a white male enter the bedroom.  Ms. Weaver testified that he was wearing a white t-shirt, possibly with a design, baggy blue jean shorts, and a baseball cap.  She could see the man clearly.  The man looked through her niece's belongings and found a metal cash box that he tried to open.  The man left the room with the cash box, and Ms. Weaver could hear him opening her kitchen drawers.  After concluding that the man had left, Ms. Weaver stepped out of the closet and called her husband, Claude Weaver. While she was on the phone, the intruder approached her and stated that he thought he was in "Brian's" house, and that he would go to his car and get a map to show Ms. Weaver.  Ms. Weaver then saw a white truck leaving her house.

Mr. Weaver testified that he was on his way home when his wife called.  He observed a white truck leaving his driveway, and attempted to block the road and flag down the driver, a white male in his 20's wearing a white t-shirt.  The man drove into a ditch and around Weaver, and left the scene.  Mr. Weaver did not record the truck's complete tag number, but he observed lens covers on the truck's backup lights.  Mr. Weaver called the police as soon as he arrived at his house.

Shortly after the police responded to the Weaver home, a white truck consistent with Weaver's description and driven by a man fitting the description of the intruder was stopped by law enforcement.  The police drove Ms. Weaver to the scene of the stop, and she identified the driver as the intruder.  Police officers testified that the driver of the white truck was Petitioner, and identified him in open court.  At the time of the stop, Petitioner had a "buck" knife and a "Boyz to Men" CD, and there was loose change in the glove compartment.  A cash box was recovered from the side of the road.   Ms.

White testified that the cash box and the knife appeared to be the same as ones from her room, and Mr. Weaver, a part-time disc jockey, identified the CD as one that he used in his business, based on scratches he observed on the CD.

At the close of the State's case-in-chief Petitioner's counsel, Victor Hayes, moved for a judgment of acquittal.  The trial court reserved a ruling on the motion, and then addressed Petitioner as to whether he wished to testify.  Petitioner stated that he had been advised that he should not testify, and affirmed that he understood he had the right to testify.  Petitioner affirmed that he had consulted with his attorney, that he believed "they know better than I do," and that his decision not to testify was voluntary.

Following closing arguments, the court instructed the jury on the elements of burglary of a dwelling, including the aggravating circumstances of being armed with a dangerous weapon and that the dwelling was occupied by a human being.  During the deliberations, the jury sent the court a note inquiring as to whether the aggravating factor of inhabited dwelling required that the defendant know that the dwelling was not inhabited.  In open court, and over Mr. Hayes' objection, the court advised the jury that the answer to the question was "no."   There were no other objections to jury instructions.  The jury found Petitioner guilty of burglary of an occupied dwelling, but did not find him guilty of the additional aggravating factor of being armed.   Respondent's Appendix Exhibit ("App. Exh.") C.

Petitioner appealed on two grounds: (1) the trial court abused its discretion by responding to the jury's question regarding inhabited dwelling, although he conceded that the trial court's instruction to the jury was "technically correct;" and (2) the trial court committed "fundamental error" by failing to accurately instruct the jury on the "remaining

in" element of Florida's amended burglary statute.  *Id*. Exh. D.[2]  The First DCA per

curiam affirmed.  *Baird v. State*, 855 So. 2d 58 (Fla. 1st DCA 2003).

Petitioner then filed a Florida Rule of Criminal Procedure 3.850 motion for post-

conviction relief, asserting five ineffective-assistance-of-counsel claims: (1) counsel

failed to call his father and brother as exculpatory witnesses; (2) counsel failed to object

to the State's failure to preserve exculpatory evidence found in the truck (CD's,

Petitioner's t-shirt, and $42.00 that Petitioner carried); (3) counsel failed to object to an

erroneous jury instruction on attempted burglary, which did not give the jury the option to

find him guilty of unarmed attempted burglary; (4) counsel failed to object to the court's

failure to rule on his motion for judgment of acquittal; and (5) counsel failed to properly

advise him regarding the consequences of his decision not to testify.  App. Exh. G.

The court summarily denied relief on grounds 2, 3, and 4.  Assessing Petitioner's

claims under *Strickland v. Washington*, 466 U.S. 668 (1984), the court noted that

Petitioner failed to allege bad faith on the part of police in failing to preserve evidence,

and that absent such bad faith Petitioner also failed to show any prejudice stemming

from the asserted failure.  The court concluded that the evidence at trial clearly

established that the offense was a completed offense, and thus there was no need for

the jury to be instructed on attempted burglary.  The court concluded that Petitioner

failed to demonstrate a likelihood that the trial court would have granted a motion for

---

[2]Under Florida law, a person can be found guilty of burglary notwithstanding a
licensed or invited entry into a dwelling, if the person remains in the dwelling
"surreptitiously, with the intent to commit an offense; . . . [a]fter permission has been
withdrawn, with the intent to commit an offense, . . . [or] [t]o commit or attempt to
commit a forcible felony."  Fla. Stat. § 810.02(1)(b).

judgment of acquittal but for counsel's failure to press for a ruling on the motion, and therefore Petitioner failed to establish prejudice.  The court ordered an evidentiary hearing on Petitioner's two remaining claims.

At the evidentiary hearing, Petitioner testified that Mr. Hayes should have called Petitioner's father, William Baird, as a witness because Mr. Baird would have testified that the change found in the truck was placed there by him for the use of Petitioner's brother.  Petitioner's brother, Clifford Baird, would have testified that the "Boyz to Men" CD belonged to him.  Petitioner testified that he did not take the stand at trial because he "was under the assumption that if I were to take the stand that the state could divulge information about my previous criminal history to the jury," and that he would "be condemning myself."  *Id*. Exh. I.

Mr. Hayes testified that he took William Baird's deposition, and that Mr. Baird indicated that Petitioner had stolen the white truck.  The state attorney was going to amend the information to charge Petitioner with Grand Theft Auto, and Hayes "begged" him not to.  Hayes testified that William Baird could not recall whether he put any change in the glove compartment.  Hayes could not recall specifically being given Clifford Baird's name as a witness, but Hayes also testified that he believed Clifford Baird may have been incarcerated at the time.  Hayes testified that he fully explained to Petitioner the risks of testifying and opening the door to evidence of past crimes of dishonesty.  Hayes did not believe that Petitioner would have followed counsel's instructions as to how to handle questions regarding the number of prior offenses involving truth or veracity.  *Id*.

Following the hearing, the court denied relief on Petitioner's remaining claims.

The court concluded that based on the evidence adduced at the hearing, Mr. Hayes investigated and considered calling other witnesses, and made a reasonable strategic decision not to call them.  With respect to Petitioner's decision not to testify at trial, the court "accept[ed] as true trial counsel's testimony that he fully advised [Petitioner] of the consequences of testifying."  The court also concluded that Petitioner failed to establish a reasonable probability that the outcome of the proceeding would have been different had he testified.  *Id*.

Petitioner appealed the denial of his motion, initially asserting only the ground that his trial counseled rendered ineffective assistance for failing to call exculpatory witnesses.  The First District Court of Appeal directed the State to also address Petitioner's claim that counsel was ineffective for failing to object to the State's failure to preserve exculpatory evidence.  Following briefing, the court *per curiam* affirmed without opinion.  *Baird v. State*, 961 So. 2d 935 (Fla. 1st DCA 2007).

Petitioner then filed the instant Petition, which Respondent concedes is timely. Petitioner reasserts the two jury-instruction claims raised in his direct appeal, and the ineffective-assistance claims raised in his postconviction motion.  Doc. 1.   Respondent contends that Petitioner's jury-instruction claims were not presented as federal claims in state court and therefore these claims are unexhausted and foreclosed from federal review.  Respondent alternatively contends that Petitioner is not entitled to relief on the merits of any of his claims.

## Section 2254 Standard of Review

For properly exhausted claims, there are limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*

535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

## Claims (1) & (2), Jury Instructions

Petitioner contends that the trial court's response to the jury question on the inhabited-dwelling aggravating circumstance violated his 14th Amendment right to due process and fundamental fairness "by invading the province of the jury and directing verdict for the state as to Petitioner's knowledge of whether the structure/dwelling was occupied."  He contends that the court's failure to correctly instruct the jury on the "remaining in" aspect of the state burglary statute violated his 14th Amendment right to due process and fundamental fairness "by failing to instruct the jury on an essential element of the crime charged."  Doc. 1.

A review of Petitioner's brief on direct appeal supports a conclusion that no federal constitutional claims were fairly presented to the state court, and that the claims are therefore unexhausted.  Even if such claims were fairly presented for exhaustion purposes, they provide no basis for federal habeas relief.  It is not the province of a federal habeas court to re-examine state court determinations on state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Jury instructions are evaluated in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982).  The inquiry on habeas review is whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution.  *Estelle*, 502 U.S. at 72 & n.4.

Petitioner concedes – as did his counsel on direct appeal – that the court's response to the jury's inhabited-dwelling question was "probably technically correct."  Doc. 1.  Petitioner does not allege that his knowledge as to whether the dwelling was inhabited was an element of the offense for which he was convicted. Reviewing the state court's response to the jury in the context of the entire proceeding, there is not a "reasonable likelihood" the jury applied the court's response in a way that violated Petitioner's federal constitutional rights because the instruction was correct and did not preclude the jury from making findings on the burglary elements that were necessary to a conviction.  *See Estelle*, 502 U.S. at 72 & n.4.  Under these circumstances, the state court's rejection of this claim was not contrary to, or an unreasonable application of, federal law.

Petitioner contends that Florida's amended burglary statute, which applied

to his offense, required that a conviction for burglary based on "remaining in" a structure must be supported by evidence that the "remaining in" was surreptitious or after permission was withdrawn, and with the intent to commit a crime.  He contends that the trial court's unobjected-to failure to correctly instruct the jury amounts to fundamental error that merits federal habeas relief.  Doc. 1.  Again, viewing the jury instructions in the context of the entire proceeding, there is no likelihood that Petitioner's federal constitutional rights were violated by any error of state law.  *See Estelle*, 502 U.S. at 72 & n.4.   There was no evidence from which the jury could reasonably infer that Petitioner's entry into the Weaver's home was invited or licensed, and therefore the "remaining in" language was inapplicable to Petitioner's case.   *See* Fla. Stat. § 810.02(1)(b).  Under these circumstances, the state court's rejection of this claim was not contrary to, or an unreasonable application of, federal law.

## Ineffective Assistance of Counsel

Because Petitioner's remaining claims raise the issue of counsel's effectiveness, a review of  *Strickland*, is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id.* at 697.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.*  at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and

the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard."  *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Claim (3) Failure to Call Exculpatory Witnesses

Petitioner contends that the testimony of his father and brother was "critical" to his defense, and would have resulted in his acquittal.  Doc. 1.

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).  After hearing counsel's testimony regarding his deposition of Petitioner's father, and Petitioner's testimony regarding the matter upon which his brother could have testified (ownership of the CD),  the state court concluded that counsel's decision not to call these witnesses was a reasonable tactical choice. Petitioner's father implicated Petitioner in a potential theft charge.  Counsel denied that Petitioner mentioned his brother as a potential witness, but in any event Petitioner's allegations as to what his brother would have testified to are speculative and of very little value in view of Ms. Weaver's unequivocal eyewitness testimony that Petitioner entered her home, rifled through her niece's belongings, and left with her niece's cash box.  On the basis of this record, and mindful of the high degree of deference that is afforded to the state court's assessment of the merits of Petitioner's ineffective-assistance claims,

Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Claim (4) Failure to Object to Lack of Preservation of Exculpatory Evidence

Petitioner contends that his trial counsel rendered ineffective assistance for failing to object to the failure of police officers to preserve certain "exculpatory evidence." Petitioner contends that this evidence consisted of: "a large consortment [sic] of CDs, the shirt Defendant was wearing at the time of his arrest and forty-two ($42.00) found on his possession."  Petitioner contends that his plain white t-shirt was exculpatory because Mrs. Weaver testified that he was wearing a t-shirt with a logo, and therefore the plain white t-shirt would have "bolstered" his defense of misidentification.  He contends that evidence of other CDs found in the truck would have called into question whether the "Boyz to Men" CD in his pocket belonged to Mr. Weaver, and would have "bolstered" Clifford Baird's testimony, if he had been called to testify.  He does not explain how the $42.00 he was carrying would have exculpated him.  Docs. 1, 16.

Exculpatory evidence is defined as "evidence favorable to [the] accused" and "material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963). At trial, Mr. Hayes extensively cross-examined Ms. Weaver as to the clothing worn by Petitioner.  During cross-examination, Ms. Weaver testified that the intruder wore a white t-shirt that she "believed" had something on it, though she could not recall what was on the shirt.  One of the arresting officers testified that Petitioner was wearing a "white t-shirt" at the time of his arrest.  In closing argument, Mr. Hayes highlighted this discrepancy, arguing "[d]id one witness come in here and say that they identified [a logo]

on . . .  his T-shirt?  Not one person."  App. Exh. C.  Thus, the record reflects that counsel did use the evidentiary discrepancy in advancing the misidentification defense. There is nothing in the record that supports a conclusion that but for counsel's failure to procure the actual t-shirt worn by Petitioner for use at trial, the result of the proceeding would have been different.

As to the additional CDs that Petitioner alleges were in the truck, it is unclear how such evidence could have exculpated Petitioner, even if his brother had testified that he owned such CDs.  There was only one CD that was alleged to be missing from the Weavers' home, and that was the "Boyz to Men" CD identified by Mr. Weaver that was found in Petitioner's pocket – not in the truck – at the time of his arrest.  Petitioner likewise fails to provide any explanation as to how evidence that he possessed $42.00 was exculpatory.  Again, there is nothing in the record that supports a conclusion that but for counsel's failure to procure such items for trial, the result of the proceeding would have been different.

In sum, Petitioner has failed to establish that the state-court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

### Claim (5) Failure to Object to Erroneous Jury Instruction on Attempted Burglary

Petitioner reasserts his claim that his trial counsel rendered ineffective assistance for failing to object to the trial court's erroneous jury instruction on attempted burglary, which Petitioner argues limited the jury to considering whether he was guilty of attempted armed burglary, but not attempted unarmed burglary.  Doc. 1.  In rejecting this claim, the state court concluded that the evidence at trial clearly established that the offense was a completed offense, and thus there was no need for the jury to be

instructed on attempted burglary.   The court thus implicitly found that Petitioner's counsel did not perform deficiently with respect to this jury instruction.  *See* App. Exh. H.

To prove ineffective assistance of counsel for failing to object to a jury instruction, the Petitioner must show that the instruction was improper; that a reasonably competent attorney would have objected to the instruction; and that the failure to object was prejudicial.  *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir.1988) (citing *Strickland*, 466 U.S. at 686-87).

As set forth above, the trial record amply supports the state court's determination that the trial evidence established a completed offense, not an attempted offense, by Petitioner.  Petitioner points to nothing in the record that would support a finding that there was a reasonable probability that the result of the proceeding would have been different had counsel objected to the court's jury instruction on attempted armed burglary.  Accordingly, Petitioner has failed to establish that the state-court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

## Claim (6) Failure to Object to Trial Court's Failure to Rule on Motion for Acquittal

Petitioner argues that his counsel rendered deficient performance by failing to object when the trial court took the motion for judgment of acquittal under advisement at the close of the evidence and then submitted the case to the jury without ruling on the motion.  Doc. 1.  At the trial court's direction, counsel focused his argument on the issue of whether the evidence established that Petitioner was armed during the burglary.  App. Exh. C.  The state court rejected this claim on postconviction review because Petitioner failed to demonstrate a reasonable likelihood that the court would have granted the motion for acquittal but for counsel's error.  App. Exh. H.

The record reflects that Petitioner was in fact *not* found guilty of armed burglary, consistent with counsel's argument following his motion for judgment of acquittal.  On this record, Petitioner has failed to establish any prejudice stemming from counsel's performance in connection with the motion.  A review of the record supports a conclusion that there is no reasonable likelihood that a judgment of acquittal would have been granted had counsel pressed for a ruling on the motion.  Accordingly, Petitioner has failed to establish that the state-court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

### Claim (7) Failure to Properly Advise on Consequences of Not Testifying

Petitioner contends that his counsel rendered ineffective assistance with respect to Petitioner's right to testify at trial.  However, Petitioner has pointed to no evidence in the record that controverts the state court's implicit finding at trial that Petitioner freely and voluntarily waived his right to testify, and the finding on postconviction review that counsel's performance in this regard was not deficient.  The trial transcript reflects that the court and counsel made an inquiry into whether Petitioner was aware of his right to testify and the consequences of testifying, and Petitioner willingly waived that right on counsel's advice.  *See* App. Exh. C.  The trial court specifically credited counsel's testimony at the evidentiary hearing that he fully advised Petitioner regarding his rights. App. Exh. H.  Moreover, Petitioner has offered nothing that suggests that there is any reasonable probability that the outcome of the trial would have been different had he elected to testify at trial, against the advice of counsel.  Under these circumstances, Petitioner has failed to establish that the state-court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

## <u>Conclusion</u>

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a Writ of Habeas Corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS**  this 25th day of July 2011.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.